UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____     :
                                        :
RAUL S. ZAVALA,                         :
                                        :
                Plaintiff,              :
                                        :
        v.                              :          Civil Action No. 08-2215 (PLF)
                                        :
DRUG ENFORCEMENT ADMINISTRATION,        :
                                        :
                Defendant.              :
_____     :

OPINION

This matter came before the Court on defendant's motion for summary judgment.

The Court carefully considered the papers filed by the parties and granted defendant's motion for

summary judgment by Order issued on September 30, 2009.  This Opinion explains the

reasoning behind that Order.

I.  BACKGROUND

Plaintiff brings this action against the Drug Enforcement Administration

("DEA"), a component of the United States Department of Justice ("DOJ"), under the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552.

A.  FOIA Request to the DEA

On January 5, 2008, plaintiff submitted a FOIA request to the DEA for "all

records submitted to the DEA relating to an investigation commenced on or about April 28,

2005, in particular[,] Reports of Investigation dated April 29, December 2, and December 19,

2005."  Compl. ¶ 5; see Def.'s Mot. for Summ. J., Declaration of Michael G. Seidel ("Seidel

Decl."), Ex. A (FOIA Request) at 1, 2.[1]  The request mentioned a criminal case in the United

States District Court for the Eastern District of Washington, Seidel Decl., Ex. A at 1, and

generally it sought "any and all . . . documents with information directly or indirectly related to"

plaintiff.  *Id.* at 2.  Although the DEA had acknowledged receipt of the request and assigned it a

tracking number (08-0617-P), as of the date this case was filed, plaintiff had not "received [any]

other written response to his request."  Compl. ¶ 8.


### B.  Referral to the DEA from the EOUSA

On January 5, 2008, plaintiff submitted a separate FOIA request to the Executive

Office for United States Attorneys ("EOUSA"), and the EOUSA referred to the DEA "251 pages

of potentially responsive material in the U.S. Attorney's Office files . . . for direct response to

plaintiff."  Seidel Decl. ¶ 8 & Ex. D (December 3, 2008 memorandum from W.G. Stewart, II,

Assistant Director, Freedom of Information & Privacy Staff, EOUSA, regarding Request No.

08-1639, and enclosures).  The DEA assigned it a tracking number (09-0282).  Seidel Decl. ¶ 9

and Ex. E (January 29, 2009 letter from K.L. Myrick, Chief, Operations Unit, FOI/Records

Management Section, DEA).  "[P]laintiff's . . . FOIA request [to the] EOUSA (also dated

January 5, 2008) was virtually identical to his request to the DEA[,]" Seidel Decl. ¶ 8, and the

DEA's Administrative Law Section ("CCA") processed the requests together.  *Id.* ¶ 10.

---

[1]      According to plaintiff, DEA Task Force Officer ("TFO") Jack Rosenthal
"prepared an initial arrest and search Report of Investigation (ROI) outlining the April 28, 2005
warrantless arrest and search of Mr. Raul Zavala" on April 29, 2005, and TFOs Jay Mehring and
Joseph Pence generated ROIs on December 2, 2005, and on December 19, 2005, respectively,
regarding "events that allegedly transpired during [plaintiff's] warrantless arrest."  Def.'s Mot.
for Summ. J., Declaration of Michael G. Seidel ("Seidel Decl."), Ex. A (FOIA Request) ¶¶ A-C.

## II.  DISCUSSION

### A.  Summary Judgment in FOIA Case

The Court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment."  *Defenders of Wildlife v. United States Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted).  In a FOIA case, the Court may grant summary judgment based on the information provided in an agency's supporting affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch.*

*Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  The DEA's Search for Responsive Records Was Adequate

Upon receiving a request under the FOIA, the agency must search its records for responsive documents.  *See* 5 U.S.C. § 552(a)(3)(A).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542; *see also Valencia-Lucena v. United States Coast Guard*, 180 F.3d at 326.

DEA staff "broadly construed" plaintiff's FOIA requests as seeking "any and all investigative information that referenced or related to him," Seidel Decl. ¶ 12, and determined

that records of this nature were "reasonably likely to be found in investigative files contained in the DEA Investigative Reporting and Filing System (IFRS)[.]" *Id.* ¶ 13.[2]

The DEA IFRS "contains all administrative, general, and investigative files compiled by DEA for law enforcement purposes." Seidel Decl. ¶ 13. "The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IFRS." *Id.* ¶ 14. NADDIS "points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents" which contain information regarding a particular subject of investigation. *Id.* An individual is "indexed and identified in NADDIS by [his] name, Social Security Number, and/or date of birth." *Id.* Using the information plaintiff provided with his request, including his Social Security number and the date and place of birth, DEA staff conducted NADDIS queries in February 2008 and January 2009. Each search produced the same result: one subject, RAUL SANCHEZ ZAVALA, who was arrested in Spokane, Washington on April 28, 2005, for delivery of methamphetamine. *Id.* ¶ 15. This individual was indexed in NADDIS under number 6082390, and was associated with investigative file number RH-04-0039. *Id.*

---

[2]     To the extent that plaintiff's FOIA requests are questions or requests for explanations of the legal basis for his arrest, *see* Seidel Decl., Ex. A at 2, the DEA properly declined to conduct research or investigation. Seidel Decl. ¶ 12. The FOIA does not require an agency to answer questions or to provide explanations. *See Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 573 (9th Cir. 1985) (affirming grant of summary judgment on requester's counterclaim which sought declaration of agency's obligation under FOIA to generate documents explaining its policies and actions); *Di Viaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) (plaintiff's questions – whether any pictures of him had been taken and if so, whether they had been disseminated – were not within FOIA's scope); *Anderson v. United States Dep't of Justice*, 518 F. Supp. 2d 1, 10 (D.D.C. 2007) ("To the extent that plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests.").

The DEA Resident Office in Spokane, Washington maintained investigative file number RH-04-0039.  Seidel Decl. ¶ 16.  Its staff "conducted searches for responsive records from file number RH-04-0039" and compared the documents contained therein to documents contained in the EOUSA referral.  *Id.*  Where necessary, CCA staff "coordinated with the U.S. Attorney's Office, Eastern District of Washington, to release documents directly to plaintiff in this action in lieu of returning select documents back to EOUSA for reply to plaintiff."  *Id.*[3]  The DEA identified 285 pages of responsive material, representing the results of both the DEA's searches and the EOUSA's referral.  Seidel Decl. ¶¶ 17, 56.  After having identified duplicate pages, the DEA released 108 pages in full, released 102 pages in part, and withheld 75 pages in full.  *Id.* ¶ 17.

Plaintiff's sole challenge to the adequacy of the DEA's search for responsive records appears to be its failure to disclose two documents: (1) a document plaintiff signed "[o]n or about the months of September or October of 2005, and in the presence of Plaintiff's former trial attorney," Decl. In Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Decl.") ¶ 1; and (2) one ROI "prepared on or about April 28, 2005, hours or days immediately after Plaintiff's arrest" by Agent Joseph Pence.  *Id.* ¶ 42.[4]

---

[3]      While plaintiff's FOIA request was pending, DEA "experienced a significant backlog of incoming FOIA requests triggered by an office transition and a large volume of incoming requests."  Seidel Decl. ¶ 10.  DEA staff moved plaintiff's request "forward in the queue," and personnel in the agency's Administrative Law Section ("CCA") processed it "in conjunction with the referral of his identical FOIA request to EOUSA in lieu of seeking an *Open America* stay.  *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)."  *Id.*

[4]      It appears that plaintiff submitted a prior FOIA request (No. 07-1242) to the DEA on August 1, 2007, *see* Decl. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. # 17-2] ("Pl.'s Decl.")
(continued...)

It is settled law that the results of a search do not determine whether the search is adequate. *See Hornbostel v. United States Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (stating that "[t]he focus of the adequacy inquiry is not on the results" of the search). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d at 128). The DEA's inability to locate all of the records plaintiff desires does not defeat summary judgment so long as the DEA "establish[es] that [its staff] located no records responsive to plaintiff's request after a reasonable search using 'methods reasonably expected to produce the information requested.'" *Davidson v. Envtl. Prot. Agency*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000) (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.

---

[4](...continued)
¶¶ 5-11, and as of December 27, 2007, the request had progressed only as far as placement "on a list of requests waiting for processing." *Id.* ¶ 13. Plaintiff does not describe the records sought in the prior request. He did state, however, that the DEA ultimately release 9 pages of records and withheld one page. *Id.* ¶ 24.

It further appears that plaintiff submitted a separate FOIA request on January 20, 2008 to the EOUSA (No. 08-259). *See* Pl.'s Decl. ¶¶ 14-16, 18. In response to the EOUSA's "February 29, 2008, . . . letter . . . indicating that an advance payment of $560.00 must be received . . . before Plaintiff's request [could] be processed," *id.* ¶ 18, a family member "did remit the necessary amount of $560.00" on plaintiff's behalf. *Id.* ¶ 20. Plaintiff represents that he neither received confirmation that the agency received this payment, nor received the requested records. *See id.* ¶¶ 21, 28-30. Another of plaintiff's FOIA requests, this one to the United States Marshals Service, *see id.* ¶¶ 33, 35, is not relevant to this action.

Apparently due to the failure of the DEA and the EOUSA to respond timely and substantively to these prior requests, plaintiff argues that the DEA has shown "bad faith" in causing a "vexatious, wanton and oppressive delay in producing records." Pl.'s Decl. ¶ 41. None of these prior requests are at issue in this case, and any delay in the agency's responses does not demonstrate bad faith in the handling of the January 5, 2008 FOIA requests to the DEA and the EOUSA.

1990)); *see Steinberg v. United States Dep't of Justice*, 23 F.3d at 551 (noting that the agency's search for responsive records depends not on "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").

On this record, the Court concludes that the methods by which the DEA staff searched for responsive records were reasonable under the circumstances. Plaintiff's speculation as to the existence of additional records, absent support for his allegations of agency bad faith, *see, e.g., Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993), does not render the searches inadequate. *See, e.g., Judicial Watch, Inc. v. United States Dep't of Health & Human Servs.,* 27 F. Supp. 2d 240, 244 (D.D.C. 1998) (finding that "plaintiff's unsubstantiated suspicions . . . therefore, are insufficient to call into question the adequacy of [the agency's] search and the truthfulness of its affidavit").

### C.  Documents Withheld Pursuant to Statutory Exemptions

Under the FOIA, an agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the [FOIA's] inspection requirements." *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). In addition to the Seidel Declaration, the DEA has submitted a

8

*Vaughn* Index "accounting for all 285 responsive pages."  Seidel Decl. ¶ 17 & Ex. G ("*Vaughn*

Index").[5]

1.  Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the

internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The phrase

"personnel rules and practices" is interpreted to include not only "minor employment matters"

but also "other rules and practices governing agency personnel."  *Crooker v. Bureau of Alcohol,*

*Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).  The "information need

not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that

matter 'related' to rules and practices is also exempt."  *Schwaner v. Dep't of the Air Force*, 898

F.2d 793, 795 (D.C. Cir. 1990) (emphasis added).

---

[5]      "To enable the Court to determine whether documents properly were withheld, the
agency must provide a detailed description of the information withheld through the submission of
a so-called 'Vaughn index,' sufficiently detailed affidavits or declarations, or both."  *Bigwood v.*
*U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007) (citations omitted); *see*
*Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) (while there is no
set form for a Vaughn index, the D.C. Circuit has identified "three indispensable elements of a
Vaughn index: (1) The index should be contained in one document, complete in itself.  (2) The
index must adequately describe each withheld document or deletion from a released document.
(3) The index must state the exemption claimed for each deletion or withheld document, and
explain why the exemption is relevant.").  "Any measure will adequately aid a court if it
'provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular
exemption is relevant and correlat[es] those claims with the particular part of a withheld
document to which they apply.'"  *Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141,
146 (D.C. Cir. 2006) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d
242, 251 (D.C. Cir. 1977)).  "[T]he precise form of the agency's submission – whether it be an
index, a detailed declaration, or a narrative – is immaterial."  *Schoenman v. Fed. Bureau of*
*Investigation*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008)  (citations omitted).

Exemption 2 applies if the information that is sought meets two criteria.  First, such information must be "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of the Air Force*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id.* at 1208.  If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material.  *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

a.  G-DEP Codes and NADDIS Numbers[6]

The DEA withholds Geographical Drug Enforcement Program ("G-DEP") codes and NADDIS numbers, part of the DEA's internal system of identifying information and individuals, under Exemption 2.  Seidel Decl. ¶ 34.  A G-DEP code is assigned to a case when it

---

[6]     The DEA invokes Exemption 2 in conjunction with Exemption 7(C) to withhold NADDIS numbers assigned to third parties.  Seidel Decl. ¶ 34(b).  Because the Court concludes that NADDIS numbers properly are withheld under Exemption 2, there is no need to consider the applicability of Exemption 7(C) with respect to the same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

is opened, and it is used to "indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id.* ¶ 34(a).  NADDIS numbers are "multi-digit numbers assigned to drug violators and suspected drug violators known to the DEA." *Id.* ¶ 34(b).  The numbers are unique to the violators to whom they are assigned and are intended for the agency's internal use. *Id.* According to Mr. Seidel, if a NADDIS number were disclosed, a requester would have "a means of finding out not only drug violator information about the subject but also personal information about [him], relatives and any third parties identifiable with the violator." *Id.*  Release of G-DEP codes could help a suspect "identify priority given to narcotic investigations, types of criminal activities, and violator ratings." *Id.* ¶ 34(a).  With this information, suspects could change their behavior so as to avoid detection and otherwise thwart the DEA's investigative and law enforcement efforts. *Id.*

G-DEP codes and NADDIS numbers fall within the scope of Exemption 2 and routinely are withheld.  *See, e.g., Bullock v. Fed. Bureau of Investigation*, 577 F. Supp. 2d 75, 81 (D.D.C. 2008) (concluding that violator and informant identifier codes, including G-DEP codes and NADDIS numbers, properly are withheld under Exemption 2); *Barbosa v. Dep't of Justice*, No. 06-0867, 2007 WL 1201604, at *6 (D.D.C. Apr. 23, 2007) (concluding that DEA properly withheld violator identifiers consisting of G-DEP codes, NADDIS numbers, and confidential informant numbers, which are part of the agency's internal system of identifying information and individuals); *Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d 5, 10-11 (D.D.C. 2006) (finding that "there is not a public interest sufficient to override the agency's appropriate interest in maintaining the secrecy of . . . internal procedures" regarding violator identifiers); *Wilson v.*

*Drug Enforcement Admin.*, 414 F. Supp. 2d 5, 12-13 (D.D.C. 2006) (concluding that G-DEP codes and NADDIS numbers properly are withheld as "high 2" exempt information, and that NADDIS numbers, insofar as they are part of the DEA's internal system of identifying information in which there is no public interest, properly are withheld as "low 2" exempt information). Therefore, the DEA's decision to withhold G-DEP codes and NADDIS numbers under Exemption 2 is proper.

b.  ORI Numbers

Under Exemption 2, the DEA withheld Originating Agency Identification numbers ("ORI"), Seidel Decl. ¶ 34, which are "multi-digit numbers utilized by criminal justice agencies in law enforcement information exchanges to include obtaining access to electronically stored law enforcement information such as the National Crime Information Center (NCIC) data." *Id.* ¶ 34(d).  ORI numbers are "internal to law enforcement agency operations" and their "disclosure could enable violators to gain unauthorized access to, as well as compromise data in, law enforcement communication systems." *Id.*

ORI numbers fall within the scope of "low 2" exempt materials and the DEA properly has withheld them under Exemption 2.  *See, e.g., Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978) (concluding that "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references" are "low 2" exempt materials), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979); *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (finding that "trivial administrative data such as . . . data processing notations[] and other administrative markings" are "low 2" exempt materials).

12

c.  Telephone and Facsimile Numbers

The DEA withholds "[i]nternal telephone and facsimile numbers" on two grounds: that there is no public interest in the release of such information, and (2) that their release "could enable violators to identify law enforcement personnel, disrupt official DEA business, and subject DEA employees to harassing phone calls."  Seidel Decl. ¶ 34(c).

The DEA easily establishes that internal agency telephone and facsimile numbers properly are withheld as "low 2" exempt material.  *See, e.g., Concepción v. Fed. Bureau of Investigation*, 606 F. Supp. 2d 14, 32 (D.D.C. 2009) (concluding that the EOUSA properly withheld the internal telephone numbers of two Assistant United States Attorneys and one paralegal as "low 2" exempt material); *Durrani v. United States Dep't of Justice*, 607 F. Supp. 2d 77, 89 (D.D.C. 2009) (concluding that agency properly withheld direct telephone numbers of ICE Special Agents as "low 2" exempt material); *James v. United States Customs and Border Protection*, 549 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (concluding that "telephone, facsimile numbers, administrative markings . . . relating to internal file control systems, [and] administrative codes and computer codes . . . of internal agency information systems" are properly withheld under Exemption 2).

2.  Exemption 7

a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must

establish that the records at issue were compiled for law enforcement purposes, and that the

material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,

673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law

enforcement purposes, the "focus is on how and under what circumstances the requested files

were compiled, and whether the files sought relate to anything that can fairly be characterized as

an enforcement proceeding."  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir.

2002) (citations and internal quotations omitted).

   Pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970,

*see* 21 U.S.C. § 801 *et seq.*, the DEA is authorized to investigate incidents "involving the

trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators

who operate at interstate and international levels," and to "cooperate with counterpart agencies

abroad and to exchange information in support of drug traffic prevention and control," among

other functions.  Seidel Decl. ¶ 32; *see id.* ¶ 29.  DEA agents gather information in the course of

an investigation and include it in an investigative case file.  *Id.* ¶ 20.  Such information "relates to

the case subject and may also include other individuals[,] such as those who are suspected of

engaging in criminal activity in association with the subject of the file."  *Id.*

   The DEA describes the records responsive to plaintiff's FOIA request as "criminal

investigative records . . . compiled during criminal law enforcement investigations of the plaintiff

and several third parties."  Seidel Decl. ¶ 33.  The records include ROIs, administrative

subpoenas, reports of drugs and other property collected, purchased or seized, chemical analysis

reports, applications for search warrants, an arrest warrant, a criminal complaint, a criminal

judgment formand arrest scene photographs.  *Id.* ¶ 18; *see id.* ¶¶ 22-28 (describing DEA Forms 6, 6a, 7, 7a, 202, and 210).

The DEA has met the threshold showing required under Exemption 7 by demonstrating that these responsive records were compiled for law enforcement purposes.

b.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "To determine whether Exemption 7(C) applies, [courts] 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'"  *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)); *see Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F. 2d at 1205.  "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *Id.* at 1206; *see Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v.*

*United States Dep't of Justice*, 968 F.2d at 1282 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).   If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."   *Boyd v. Criminal Div. of the United States Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)).

Under Exemption 7(C), the DEA withholds "[t]he identities of DEA Special Agents (including supervisory agents), and other federal, state/local law enforcement officers," Seidel Decl. ¶ 39, and "[t]he identities of government employees, DEA drug evidence custodians, forensic chemists and laboratory personnel," *id.* ¶ 41.   The DEA asserts that these officers and employees "were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff," and that they were or still are "in positions of access to information regarding official law enforcement investigations."   *Id.* ¶ 40; *see id.* ¶ 42.   If their identities were disclosed, "they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations."   *Id.* ¶ 40; *see id.* ¶ 42.   With respect to all of these third parties, disclosure of their identities would put them "in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file."   *Id.* ¶ 39; *see id.* ¶ 41. These arguments apply equally to the non-DEA personnel whose names are mentioned in the relevant records.

Plaintiff appears to concede this point, as he responds that he "is not seeking names of DEA [or] EOUSA personnel[.]"   Pl.'s Mot. & Mem. of P. & A. in Opp'n to Def.'s

Summ. J. Mot. ("Pl.'s Opp'n") at 3.  Rather, he has requested information about himself,

particularly ROIs prepared by DEA agents involved in his arrest on April 28, 2005, and "asserts

that DEA agents fabricated" these reports.  *Id*.  For this reason, he argues that there is a public

interest at stake in this case because the DEA agents "fabricated Reports of Investigation," Pl.'s

Decl. ¶ 49, and thereby brought about his current incarceration.  *See id*. ¶¶ 47-49; Pl.'s Opp'n at

3.  In his view, disclosure of these records not only "will reveal the fraud by certain Government

representatives," Pl.'s Opp'n at 3, but also will support a collateral attack on the conviction and

sentence.  *See* Compl. ¶¶ 9-10.

Plaintiff's "bare and undeveloped allegations" of fraud "would not warrant a

belief by a reasonable person that impropriety might have occurred," however.  *Sussman v.*

*United States Marshals Serv.*, 494 F.3d  at 1116 (citing  *Nat'l Archives & Records Admin. v.*

*Favish*, 541 U.S. at 174).  Moreover, it is settled that the public interest in disclosure "does not

include helping an individual obtain information for his personal use" to overturn a conviction.

*Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other*

*grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004).[7]  "[A]n individual's

personal interest in challenging his criminal conviction is not a public interest under FOIA

because it 'reveals little or nothing about an agency's own conduct.'"  *Willis v. United States*

*Dep't of Justice,* 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (quoting *Reporters Comm. for Freedom*

*of the Press*, 489 U.S. at 773).

---

[7]       Plaintiff unsuccessfully has sought post-conviction relief.  *See United States v.*
*Zavala*, Nos. CR-05-0105-LRS, CV-06-0133-LRS, 009 WL 1812097 (E.D. Wash. June 25,
2009) (denying motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence); *United*
*States v. Zavala*, No. CR-05-0105-LRS, 2006 WL 525618 (E.D. Wash. Mar. 3, 2006) (denying
motion under Fed. R. Crim. P. 29(c) to set aside verdict).

Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984), and courts "have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citations omitted). The DEA properly withheld the names of and identifying information about the law enforcement officers and other government employees mentioned in these law enforcement records. *See, e.g., Sussman v. United States Marshals Serv.*, 494 F.3d at 1115 (affirming decision to withhold names, addresses, telephone numbers, social security numbers, and other private information pertaining to law enforcement officials, other government employees, and unnamed third parties).

c.   Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A confidential source may be an individual, such as a private citizen or paid informant, or it may be a state, local or foreign law enforcement agency. *Lesar v. Dep't of Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980). There is no assumption that a source is confidential for purposes of Exemption 7(D) solely because the source provides information to a law enforcement agency in the course of a criminal investigation. *See United States Dep't of Justice*

18

*v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality is determined on a

case-by-case basis.  *Id*. at 179-80.  "A source is confidential within the meaning of 7(D) if the

source provided information under an express assurance of confidentiality or in circumstances

from which such an assurance could reasonably be inferred."  *Williams v. Fed. Bureau of*

*Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

i.  Express Grant of Confidentiality

Where a law enforcement agency relies on express assurances of confidentiality to

justify its decision to withhold information under Exemption 7(D), it must offer "probative

evidence that the source did in fact receive an express grant of confidentiality."  *Campbell v.*

*United States Dep't of Justice*, 164 F.3d at 34 (quoting *Davin v. United States Dep't  of Justice*,

60 F.3d 1043, 1061 (3d Cir. 1995)).  "Such evidence can take a wide variety of forms, including

notations on the face of a withheld document, the personal knowledge of an official familiar with

the source, a statement by the source, or contemporaneous documents discussing practices or

policies for dealing with the source or similarly situated sources."  *Id.*

The DEA withheld information obtained from other state, local or foreign

agencies.  Seidel Decl. ¶ 45.  Its declarant explains that the documents themselves contain "an

expressed condition of confidentiality . . . prohibiting further distribution" of the material.  *Id.*

For this reason, the DEA withheld in full 26 pages of records on the ground that their "disclosure

would reveal information provided by a State, local, or foreign agency on a confidential basis."

*Id.*

The DEA establishes that the express assurance of confidentiality "is contained on

documents received," Seidel Decl. ¶ 45, and this showing is sufficient to justify its decision to

withhold this information under Exemption 7(D).  *See Billington v. United States Dep't of Justice*, 233 F.3d 581, 585 (D.C. Cir. 2000) (finding that "a memorialization made contemporaneously with a report summarizing information received from a confidential source certainly suffices" to establish an express assurance of confidentiality); *Kimberlin v. Dep't of the Treasury*, 774 F.2d 204, 209 (7th Cir. 1985) (per curiam) (concluding that a local law enforcement agency provided information to the Bureau of Alcohol, Tobacco and Firearms under an express assurance of confidentiality in light of "a traditional understanding of confidentiality with respect to information provided by non-federal and local law enforcement agencies").

### ii.  Implied Grant of Confidentiality

Plaintiff "was convicted of possession with intent to distribute 500 grams or more of methamphetamine and the use of a communication facility to facilitate the commission of a felony.  Seidel Decl. ¶ 47.  The DEA asserts that "individuals who provided information about the plaintiff or his associates would fear for their safety," given that "violence is inherent in the trade in illicit substances.  *Id.*  Further, it states that "release of the names of any sources, any identifying information about such sources, or the information they provided, could jeopardize DEA operations [because] their cooperation and that of other similarly situated individuals could be needed in . . . future criminal investigations."  *Id.*

Courts have held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators.  *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine); *Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d at 13 (concluding that a source

who provided information pertaining to the requester's methamphetamine trafficking activities

did so under an implied assurance of confidentiality); *Chavez-Arellano v. United States Dep't of*

*Justice,* No. 05-2503, 2006 WL 2346450, at *9-10 (D.D.C. Aug. 11, 2006) (same), *appeal*

*dismissed*, No. 06-5279, 2007 WL 2910057 (D.C. Cir. Sept. 19, 2007) (per curiam); *Engelking v.*

*Drug Enforcement Admin.*, 119 F.3d 980, 981 (D.C. Cir. 1997) (concluding that a source

provided information about requester's methamphetamine distribution operation, which was the

subject of "multiple cooperative investigations by federal, state, and local law enforcement

agencies, [and]  which ultimately resulted in [requester's] conviction following the seizure of two

methamphetamine laboratories, six handguns, and a rifle," under an implied assurance of

confidentiality), *cert. denied*, 522 U.S. 1094 (1998).  The DEA properly withholds the identities

of and information provided by such confidential sources under Exemption 7(D).

d.  Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law

enforcement records that "could reasonably be expected to endanger the life or physical safety of

any individual."  5 U.S.C. § 552(b)(7)(F).  The Court has reviewed the *Vaughn* Index, and finds

that the DEA relies on Exemption 7(F) in conjunction with either Exemption 7(C) or 7(D) with

respect to the same information.  Because the Court has concluded that the same information

properly is withheld under either Exemption 7(C) or 7(D), there is no need to consider the

applicability of Exemption 7(F) with respect to the same information.  *See Simon v. Dep't of*

*Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

### D.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999).  The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The Court has reviewed the DEA's declaration and the *Vaughn* Index submitted in support of its motion, and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt."  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

### III.  CONCLUSION

The DEA has established that its search for responsive records was reasonable under the circumstances and that it properly withheld information under Exemptions 2, 7(C), 7(D) and 7(F).  Because no material facts are in dispute and the DEA is entitled to judgment as a matter of law, the Court granted summary judgment to the DEA by Order of September 30, 2009.

/s/ _____
PAUL L. FRIEDMAN
United States District Judge

DATE:  November 4, 2009